IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARK ALLEN ROLLYSON,

        Petitioner,

v.                                                                              Civil Action No. 3:10cv3
                                                                          Criminal Action No. 3:07cr98

UNITED STATES OF AMERICA,              (Judge Bailey)

        Respondent.

**REPORT AND RECOMMENDATION**

**I. PROCEDURAL HISTORY**

On January 25, 2010, the *pro se* petitioner, Mark Allen Rollyson, ["Petitioner"], filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. This matter is pending before me for initial review and report and recommendation pursuant to LR PL P 83.09.

Upon a preliminary review of the petitioner's § 2255 motion, it appeared that the motion was untimely. Thus, pursuant to Hill v. Braxton, 277 F.3d 701, 707 (4th Cir. 2002), on January 27, 2010, the undersigned issued a notice advising the petitioner that his case would be recommended for dismissal unless he could show that his motion was timely. (Dkt.# 321).

On February 18, 2010, the petitioner filed a response to the Court's Hill v. Braxton Notice (Dkt.# 324), which offered no explanation as to why his § 2255 motion was untimely. Rather, he stated: "[t]he following explains Mark Allen Rollyson (petitioner) not filing a motion both timely and properly to appeal his sentence[.]" He then summarized, in a somewhat garbled fashion, the events on his docket, beginning with his sentencing and continuing to the present,

mischaracterizing or misinterpreting several of the Court's prior rulings.[1] Finally, he averred that "[a]s the petitioner's response to the court's Hill v. Braxton Notice makes clear that the petitioner was very much attempting to act in good faith in properly filing a motion for an attorney on a first appeal."[2]

## II. FACTS

### A. Conviction and Sentence

On January 11, 2008, pursuant to a plea agreement with the United States, petitioner pled guilty to Count Six of the indictment, distribution of 0.94 grams of cocaine base, also known as "crack," in violation of Title 21, USC, §§ 841(a)(1) and 841(b)(1)(C). (Dkt.# 70). In the plea agreement, the parties stipulated and agreed petitioner's total relevant conduct was 21.68 grams of cocaine base. Additionally, the petitioner waived his right to appeal and to collaterally attack his sentence.

Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 10. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions made by the United States in this plea agreement, the defendant knowingly

---

[1] Petitioner claims that he did not respond to the Court's September 22, 2008 "Order Directing Respondent to Answer" (Dkt.# 250), issued after he filed his first § 2255 motion (Dkt.# 248) on September 12, 2008, believing that "the court would rely on his September 19, 2008 2255 motion if he did not respond." He explains his failure to file objections to this Court's June 29, 2009 "Order Adopting Report and Recommendation" (Dkt.# 288) dismissing that first § 2255 motion, as "[h]owever the petitioner did through his September 19, 2008, 2255 motion objected [sic] to his gun enhancement." Petitioner also discusses his various prior requests for counsel to be appointed to appeal the earlier District Court Order denying the first § 2255 motion. He construes the intent of the instant Hill v. Braxton Notice as "after an [sic] preliminary review [the court] denied the petitioner's 2255 Ineffective Assistance of Counsel motion and allowing the petitioner thirty (30) days to respond."

[2] By "first appeal," petitioner appears to be referring to his unsuccessful appeal of this Court's June 29, 2009 Order Adopting Report and Recommendation, which denied and dismissed his first § 2255 motion. (4th Cir. Dkt.# 11) (09-7249). Petitioner never filed a direct appeal of his conviction.

2

> and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code Section 3742. Defendant also waives his right to challenge his sentence or the manner in which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence; however, in the event that there would be an appeal by the United States, Defendant's waiver contained in this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

Plea Agreement, Dkt.# 70 at 4.

On February 4, 2008, the petitioner entered his plea in open court. Petitioner was 47 years old and had graduated from high school. (Plea transcript at 4). The Assistant U.S. Attorney ("AUSA") read aloud or summarized each paragraph of the plea agreement in open court, (Id. at 6 - 12) including paragraph 10, supra. (Id. at 10 - 11). Petitioner stated he agreed with all the terms and conditions of the plea agreement. (Id. at 14). The Court specifically asked petitioner if he understood that he was waiving his appellate and post-conviction relief rights, and petitioner said "Yes, Sir." (Id. at 13). The Court asked petitioner's counsel if he believed petitioner understood the waiver of appellate rights and counsel indicated that he believed petitioner did so understand. (Id.). The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 18 - 20).

During the plea hearing, the Government presented the testimony of Deputy Sheriff Theodore Snyder of the Berkeley County Sheriff's Department, assigned to the Eastern Panhandle Drug and Violent Crimes Task Force, to establish a factual basis for the plea. (Id. at 20 - 22). The petitioner did not contest the factual basis of the plea. After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of

3

Count 6 of the indictment. (Id. at 23). The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id.). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id.) The petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. (Id. at 24). Finally, petitioner said that he was in fact guilty of the crime to which he was pleading guilty. (Id. at 24).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that the petitioner was competent to make the plea, understood the consequences of pleading guilty, and that the elements of the crime were established beyond a reasonable doubt. (Id. at 24). The petitioner did not object to the Court's finding.

On May 21, 2008, the petitioner appeared before the Court for sentencing. After considering several factors, including the circumstances of both defendant and the crime, as well as the sentencing objectives of punishment, the Court sentenced petitioner to a term of 71 months imprisonment, three years supervised release; no fine or restitution; and a $100.00 special assessment. (Dkt.# 152).

  **C.**    **Appeal**

Petitioner did not pursue a direct appeal.

  **D.**    **Federal Habeas Corpus**

Petitioner filed his first Motion to Vacate, Set Aside or Correct Sentence by a person in Federal Custody Under 28 U.S.C. § 2255 on September 19, 2008. (Dkt.# 248), challenging the two-level gun enhancement to his sentence guideline. By Order entered on June 29, 2009. (Dkt.# 288) that motion was denied for lack of jurisdiction because petitioner was found to have knowingly, intelligently and voluntarily waived his rights to collaterally attack his sentence and

conviction in his plea agreement and Rule 11 colloquy. Because petitioner did not file any objections to the Order denying his § 2255 motion, his appeal of the same to the Fourth Circuit Court of Appeals was unsuccessful.[3] He was denied a certificate of appealability and the appeal was dismissed by unpublished *per curiam* opinion on November 19, 2009. (Dkt.# 311) Mandate on that decision issued on January 4, 2010. (Dkt.# 315). Petitioner filed this present and second Motion to Vacate, Set Aside or Correct Sentence by a person in Federal Custody Under 28 U.S.C. § 2255 on January 25, 2010. (Dkt.# 316), asserting three grounds of ineffective assistance of counsel ("IAC"):

1) at sentencing, counsel erred by not challenging the Government's failure to honor its plea agreement promise to recommend that petitioner be sentenced to the lower end of the sentencing guideline;

2) at sentencing, counsel failed to challenge: the Government's assertion that the sawed-off shotgun found at petitioner's home might have been an illegal length; the finding that petitioner possessed the shotgun in furtherance of his drug crime; further, counsel failed to request a hearing on the legality of the shotgun, all of which resulted in a two-level gun enhancement to petitioner's sentence; and

3) counsel failed to advise petitioner to file a notice of appeal.[4]

---

[3] Instead of filing objections, three days after receiving the Report and Recommendation ("R&R") denying his first § 2255 motion, petitioner wrote a letter to the Clerk of the District Court stating that he would appeal the R&R and asking that counsel be appointed to him for that purpose. The letter was received and docketed by the Clerk on February 4, 2009. (Dkt.# 283). Although the letter is docketed as an objection, it stated no legal or factual objections. The Order Adopting Report and Recommendations was subsequently entered on June 29, 2009, and petitioner filed his notice of appeal of that decision on July 7, 2009. (Dkt.# 292).

[4] Petitioner nowhere claims that he directed his trial counsel to file a notice of appeal on his behalf and that trial counsel failed to do so. He freely admits that he was advised of his appellate rights; in his "Exhibit A" (memorandum in support) of his §2255 motion, he states "The court clearly advised the defendant of his right to appeal in a timely manner. (May 21, 2008 Sentencing Hearing Tr.22 and 23)." (Dkt# 316-1 at 10).

## III. ANALYSIS

### A. Petitioner's Burden of Proof

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D.Va Jan. 4, 2006).

### B. Waiver[5]

---

[5] Despite the fact that this is petitioner's numerically second § 2255 petition, it is not successive, and therefore cannot be summarily dismissed for failure to obtain appropriate certification from the Fourth Circuit Court of Appeals, pursuant to 28 U.S.C. §§ 2244 and 2255, because it relates to the sentencing and appeal matters which arose after the entry of the plea.

Regarding a second or successive federal habeas corpus, 28 U.S.C. § 2255 states:

> A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain--
>
> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

"While AEDPA [Anti-Terrorism and Effective Death Penalty Act of 1996] imposes gatekeeping restrictions on "second or successive" motions, it does not define what constitutes a "second or successive" motion. Courts have uniformly rejected a literal reading of the phrase. For a petition to be second or successive, "it must at a minimum be filed subsequent to the conclusion of a proceeding that 'counts' as the first." [A]n initial petition will "count" where it has been adjudicated on the merits or dismissed with prejudice. Rivas v. U.S., 2009 U.S. Dist. LEXIS 122011, 9 - 10 (W.D. NC, 2009), quoting Thai v U.S., 391 F.3d 491, 494 (2nd Cir. 2004). In order for a § 2255 petition to be considered successive, the first petition must have been dismissed on the merits. Harvey v. Horan, 278 F. 3d 370, 379 (4th Cir. 2002). "Controlling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application." Sanders v. U.S., 373 U.S. 1, 15, 83 S. Ct. 1068, 10 L. Ed. 2d 148 (1963). "It is settled law that not every numerically second petition is a "second or successive" petition within the meaning of the AEDPA. For example, when a first petition is dismissed on technical grounds, such as failure to exhaust state remedies, it is not counted; thus, a subsequent petition is not considered

6

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727, 731 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity

---

second or successive." In Re: Williams, 444 F.3d 233, 236 (4th Cir. 2006) *quoting* Slack v. McDaniel, 529 U.S. 473, 485-86, 120 S.Ct. 1595, 146 L.Ed. 2d 542 (2000).

Here, petitioner's first § 2255 motion raised a different ground than was raised in his second petition. Because petitioner's first § 2255 motion was summarily dismissed for lack of jurisdiction (because petitioner had validly waived his collateral attack rights), the sole ground raised in his first petition was never 'determined adversely" to him because it was never even considered. A valid appeal waiver cannot result in a dismissal of an appeal on its merits because the very purpose of an appeal waiver is a dismissal of the appeal without ever addressing its merits. U.S. v. Blick, 408 F.3d 162, 167 - 68, 2005 U.S. App. LEXIS 9742 (4th Cir. 2005). There is no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005). "Dismissals for want of jurisdiction are paradigms of non-merits adjudication. In such a dismissal, the trial court does not regard the merits of an action. It merely classifies an action, whatever its merits, as one on which the court concerned cannot speak." Shoup v. Bell & Howell Co., 872 F.2d 1178, 1181 (4th Cir. 1989).

Petitioner's first § 2255 motion was denied on June 29, 2009 by Order Adopting Report and Recommendation ["R&R"](Dkt.# 288). The R&R that the Order adopted (Dkt.# 278) recommended that the petition be "denied and dismissed from the docket." Fed R Civ Pro 41(b) states, in pertinent part: " . . . Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule - -**except one for lack of jurisdiction**, improper venue, or failure to join a party under Rule 19 - - operates as an adjudication on the merits."

Because the order dismissing petitioner's first §2255 petition specified that the dismissal was for lack of jurisdiction and was silent as to its prejudicial effect, then his first §2255 motion was not dismissed "on its merits." Petitioner has raised new grounds in this instant petition that have not been previously 'determined adversely" to him, thus his first petition cannot "count" for purposes of construing this instant one as "second or successive."

7

of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived her right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.[6]

Subsequently, in Lemaster, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like the waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that IAC claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Attar, 38 F.3d at 732 [holding it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were

---

[6] This is the situation in the case at bar. Petitioner is attacking matters that occurred at sentencing, which were subsequent to his guilty plea.

conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations"].

Therefore, when reviewing an IAC claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal. Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated the right to challenge a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel" are not waived by a general waiver of appeal rights

9

contained in the plea agreement. Attar, 38 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing are not barred by a general waiver-of appeal rights.

Several courts have distinguished IAC claims raised in a § 2255 case from those raised on direct appeal. In Braxton v. United States, 358 F. Supp. 2d 497 (W.D.Va. 2005), the Court noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3 (4th Cir. 2000) (collecting cases); Butler v. United States, 173 F. Supp. 2d 489, 493 (E.D.Va. 2001)). Nonetheless, the Court distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F. Supp. 2d at 503.

The Court in Braxton further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995) also supports such a distinction. Braxton, 358 F. Supp. 2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

The Fourth Circuit Court of Appeals' decision in United States v. Morris, 247 Fed. Appx. 459, 2007 U.S. App. LEXIS 21976 (4th Cir. 2007) indicates that when the district court conducts a thorough Rule 11 colloquy and the defendant specifically mentions he waives the right to appeal any sentence below the statutory maximum, the record established that defendant made a knowing and voluntary waiver of rights. Similarly here, petitioner waived his right to collaterally attack the sentence. (Plea agreement, Dkt.# 70 at 4, paragraph 10). Further, the District Court conducted a very thorough Rule 11 colloquy and the petitioner testified under oath that he understood that he was waiving his right to appeal and to collaterally attack his conviction by habeas corpus (Plea Transcript at 13). The only reasonable conclusion is that petitioner entered his plea knowingly and voluntarily, and thus he validly waived the right to collaterally attack his guilty plea. This Court arrived at the same conclusion when analyzing petitioner's first § 2255 motion. However, a waiver analysis may not be dispositive of the issues in this petition because petitioner has now raised three new IAC claims regarding counsel's action or inaction at the sentencing hearing or thereafter, claims which, had they been

11

timely raised in a first petition, might have been heard as "falling outside" of the scope of the waiver.

### D. Timeliness

In 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted, establishing a one-year limitation period within which to file any federal habeas corpus motion pursuant to 28 U.S.C. § 2255.

The limitation period shall run from the last of:

1. The date on which the judgment of conviction becomes final;

2. The date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3. The date on which the right was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;[7] or

4. The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255.

However, the Fourth Circuit has held that the AEDPA statute of limitations is subject to equitable modifications such as tolling. United States v. Prescott, 221 F.3d 686, 687-88 (4th Cir. 2000). Nonetheless, "rarely will circumstances warrant equitable tolling." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003). In order to be entitled to equitable tolling, petitioner bears the burden of presenting evidence which shows that he was prevented from timely filing his § 2255

---

[7] The one-year statute of limitation period under this subsection runs from the date on which the Supreme Court initially recognized the right asserted, not from the date on which the right asserted was made retroactive. Dodd v. United States, 545 U.S. 353, 125 S. Ct. 2478 (2005).

12

petition because of circumstances beyond his control, or external to his own conduct, and that it would be unconscionable, or that a gross injustice would occur, if the limitation were enforced. Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000). To make such a showing, petitioner must also show that he employed reasonable diligence in investigating and bringing his claims. Miller v. New Jersey State Department of Corrections, 145 F.3d 616, 617 (3rd Cir. 1998).

In this case, despite adequate notice from the Court, the petitioner has failed to even allege, let alone show that he is entitled to equitable tolling or that his petition is otherwise timely. As stated supra, in order for a §2255 petition to be considered successive, the first petition must have been dismissed on the merits. Harvey v. Horan, *supra* at 379. Although petitioner's first §2255 motion was not a dismissal on the merits, this instant §2255 motion, being grossly untimely and ineligible for equitable tolling, should be dismissed on statute of limitations grounds. Such a dismissal is akin to a dismissal on the merits. *See* Shoup, *supra* at 1180. Thus, should petitioner again attempt to abuse the writ, it will bar a subsequent motion without leave of the Fourth Circuit. Further, because a dismissal for failure to comply with the statute of limitations operates as an adjudication on the merits, Fed. R. Civ. P. 41(b) also dictates this result, because all but certain enumerated dismissals are considered "on the merits," and the rule does not exempt a dismissal on statute of limitations grounds from its general operation. Id.

Finally, a careful review of the record reveals that none of petitioner's present claims have any merit.[8] Each issue he now pleads was known to him and available when he filed his first § 2255 petition; thus all are procedurally defaulted. They are hardly "newly-discovered

---

[8] Petitioner's second IAC claim regarding the sawed-off shotgun is actually a thinly-disguised impermissible attempt to get a second bite at the apple: his possession of this shotgun gave rise to a two-level sentence enhancement, the sole ground raised in his first 2255 motion; now he raises it again with an "ineffective assistance of counsel" label attached.

evidence" only discoverable through due diligence, nor do any of them implicate any new rule of constitutional law made retroactive to cases on collateral review. As the Supreme Court opined in Sanders recounting its earlier decision in Wong Doo v. United States, 265 U.S. 239, 44 S. Ct. 524; 68 L. Ed. 999; 1924 U.S. LEXIS 2599 (1924), "[a] prisoner who on a prior motion under § 2255 has deliberately withheld a ground for relief need not be heard if he asserts that ground in a successive motion; his action is inequitable - - an abuse of the remedy - - and the court may in its discretion deny him a hearing[.]" Sanders v. U.S., supra at 9 -10.

Recognizing that pursuant to Sanders, no matter how many prior applications for relief under § 2255 a prisoner makes, controlling weight may not be given to any previous applications if, as in this case, they were not adjudicated on the merits or if a different ground is presented by the new application, and that under those circumstances, considering the merits of the new application can only be avoided if, as here, there has been an abuse of the writ. The abuse is the Government's burden to plead. Sanders, *supra* at 17. The Government has done so in its Motion to Dismiss. However, the Government's motion alleges that this Court lacks jurisdiction to hear petitioner's claims because petitioner failed to seek the authorization of the Fourth Circuit Court of Appeals to file a second or successive § 2255 motion. The Court has already found that this petition was not successive. The Court now finds that in addition to being untimely, petitioner has also abused the writ and accordingly, his claims should be denied in their entirety.

## IV. RECOMMENDATION

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion, **GRANTING** the Government's earlier

Motion to Dismiss (Dkt.# 319) on other grounds, and **DISMISSING this case from the docket with prejudice.**

Any party may file, within **fourteen (14) days** after being served with a copy of this Recommendation with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objection should also be submitted to the United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATE:_____

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE